UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| ALFRED DISESSA, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 1:20-cv-10704-IT |
| | * | |
| TIMOTHY O'TOOLE, in his individual and | * | |
| official capacities, | * | |
| | * | |
| Defendant. | * | |

<u>MEMORANDUM & ORDER</u>

May 20, 2021

TALWANI, D.J.

       This is one of two related cases involving the alleged mistreatment of Plaintiff Alfred Disessa by employees of the Massachusetts Department of Corrections while he was incarcerated at Massachusetts Correctional Institution-Shirley ("MCI-Shirley"). Disessa alleges that corrections officer Timothy O'Toole, along with at least one other corrections officer, physically assaulted him during a strip search and then brought fabricated charges against him for assault and battery.[1]

       Pending before the court is O'Toole's <u>Motion to Dismiss</u> [#22] based on lack of subject matter jurisdiction and failure to state a claim. For the following reasons, the motion is GRANTED IN PART and DENIED IN PART.

---

[1] The other corrections officers allegedly involved are named as defendants in the related case, <u>Disessa v. Ryan et al</u>, No. 18-cv-11024 (D. Mass. Jun. 7, 2018).

## I.      Factual Background

As alleged in the <u>Complaint</u> [#1], the facts are as follows. At the time of the events at issue, Disessa was incarcerated at MCI-Shirley. Compl. ¶ 6 [#1]. On July 2, 2015, O'Toole suspected that Disessa had improperly stored his medication in his cheek. <u>Id.</u> at ¶ 7. O'Toole and Lieutenant Alvin LaRoche then brought Disessa to a cell, which was out of range of any surveillance cameras, in order to strip search him. <u>Id.</u> at ¶¶ 8-10. During the strip search, O'Toole grabbed Disessa by the neck and choked him. <u>Id.</u> at ¶ 11. When Disessa was naked, LaRoche twisted Disessa's testicles while saying "see how you like this" and repeatedly elbowed him in the kidney. <u>Id.</u> at ¶¶ 12-13. Officer Christopher Deveneau observed the strip search and assault but did not intervene. <u>Id.</u> at ¶ 14. Upon Disessa's request, Deveneau took pictures of Disessa's neck but refused to take pictures of his testicles. <u>Id.</u> at ¶¶ 15-16.

Afterwards, Disessa alleges that O'Toole and LaRoche falsely accused him of assault and battery. <u>Id.</u> at ¶ 17. Specifically, they accused Disessa of pushing them out of the way after a small package, which the corrections officers assumed contained medication, fell out of his clothing. <u>Id.</u> at ¶ 18. The officers also falsely accused Disessa of ingesting the contents of the package. <u>Id.</u> at ¶ 19. At some point, Disessa heard LaRoche say that he was going to "bury" Disessa. <u>Id.</u> at ¶ 20.

On November 25, 2015, Disessa was arraigned in Ayer District Court on two charges of assault and battery on a corrections facility employee. <u>Id.</u> at ¶ 22. O'Toole and LaRoche were named as the alleged victims. <u>Id.</u> The corrections officers allegedly made false statements to the Commonwealth and encouraged and participated in Disessa's prosecution on the false charges. <u>Id.</u> at ¶ 23. Following a jury trial, Disessa was acquitted of both counts. <u>Id.</u> at ¶ 25.

## II.     Procedural Background

On June 7, 2018, Disessa filed a *pro se* complaint against O'Toole and several other

Department of Corrections employees, alleging violations of his constitutional rights. Complaint,

Disessa v. Ryan et al, No. 18-cv-11024 (D. Mass. Jun. 7, 2018) ECF No. 1. Disessa's counsel

then filed an amended complaint on July 2, 2018. Amended Complaint, Disessa v. Ryan et al,

No. 18-cv-11024 (D. Mass. Jul. 2, 2018) ECF No. 31.

At the time of attempted service, O'Toole had left his employment with the Department

of Corrections. Summons Returned Unexecuted, Disessa v. Ryan et al, No. 18-cv-11024 (D.

Mass. Aug. 20, 2018) ECF 14. The Department refused to accept service of process on his

behalf. Id. On March 10, 2020, the court dismissed O'Toole from that matter without prejudice

for failure to properly effect service. Mem. & Order, Disessa v. Ryan et al, No. 18-cv-11024 (D.

Mass. Mar. 10, 2020) ECF 43.

On April 9, 2020, Disessa brought this action against O'Toole in his individual and

official capacities, asserting common law claims of malicious prosecution and civil conspiracy.[2]

Disessa was able to successfully serve O'Toole, and O'Toole, now represented by Department of

Corrections counsel, filed the pending Motion to Dismiss [#22] on January 25, 2021.

## III.     Standard of Review

Federal courts are courts of limited jurisdiction, so federal jurisdiction is never presumed.

Viqueira v. First Bank, 140 F.3d 12, 16 (1st Cir. 1998). The party asserting jurisdiction has the

burden of demonstrating the existence of federal jurisdiction. Id. A court should treat all well-

_____

[2] The Complaint [#1] does not make clear whether the claims are brought pursuant to 42 U.S.C.
§ 1983 or common law, but Disessa's Opposition 2 [#24] clarifies that the claims are common
law claims.

pleaded facts as true and provide the plaintiff the benefit of all reasonable inferences. <u>Fothergill v. United States</u>, 566 F.3d 248, 251 (1st Cir. 2009). Dismissal is appropriate only when the facts alleged in the complaint, taken as true, do not support a finding of federal subject matter jurisdiction. <u>Id.</u> A challenge to the court's subject matter jurisdiction must be addressed before addressing the merits of a case. <u>See</u> <u>Acosta-Ramirez v. Banco Popular de Puerto Rico</u>, 712 F.3d 14, 18 (1st Cir. 2013) ("Federal courts are obliged to resolve questions pertaining to subject-matter jurisdiction before addressing the merits of a case").

In evaluating a motion to dismiss for failure to state a claim, this court assumes "the truth of all well-pleaded facts" and draws "all reasonable inferences in the plaintiff's favor." <u>Nisselson v. Lernout</u>, 469 F.3d 143, 150 (1st Cir. 2006). To survive dismissal, a complaint must contain sufficient factual material to "state a claim to relief that is plausible on its face." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 559 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . [f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." <u>Id.</u> at 555 (internal citations omitted). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 663 (2009).

"While most Rule 12(b)(6) motions are premised on a plaintiff's putative failure to state an actionable claim, such a motion may sometimes be premised on the inevitable success of an affirmative defense." <u>Nisselson</u>, 469 F.3d at 150. A court may allow a Rule 12(b)(6) motion based on an affirmative defense if "(i) the facts establishing the defense are definitively ascertainable from the complaint and the other allowable sources of information, and (ii) those

facts suffice to establish the affirmative defense with certitude." Id. (quoting Rodi v. S. New Engl. Sch. of Law, 389 F.3d 5, 12 (1st Cir. 2004)).

### IV.   Discussion

#### A.   *Subject Matter Jurisdiction*

O'Toole's first argument is that the Complaint [#1] does not plead an adequate basis for this court's subject matter jurisdiction. Def.'s Mem. 5 [#23]. Specifically, O'Toole states that that the Complaint [#1] "does not cite federal law; it only states that jurisdiction is brought pursuant to 28 U.S.C. § 1391." Id.

The Complaint [#1] states under the heading "Jurisdiction" that the action "is direct[ly] related to the matter of [Disessa v. Ryan et al, No. 18-cv-11024]," which in turn "arises under the Constitution and law of the United States," and was brought pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988. Compl. ¶¶ 3-4 [#1]. Plaintiff asserts that the court therefore has ancillary jurisdiction over Disessa's state law claims. Pl.'s Opp. 2-3 [#24].

"Ancillary jurisdiction 'recognizes federal courts' jurisdiction over some matters (otherwise beyond their competence) that are incidental to other matters properly before them.'" Industria Lechera De Puerto Rico, Inc. v. Beiro, 989 F.3d 116, 122 (1st Cir. 2021) (quoting Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 378 (1994)). Federal courts may exercise ancillary jurisdiction for "two separate, though sometimes related, purposes: (1) to permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent, . . . and (2) to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees." Kokkonen, 511 U.S. at 379–80 (internal citations omitted).

Here, where both this case and <u>Disessa v. Ryan et al</u>, No. 18-cv-11024, stem from the same set of underlying facts; where the complaint in <u>Disessa v. Ryan et al</u> alleges federal claims stemming from those facts; and where O'Toole was originally named as a defendant in that action but was dismissed without prejudice for failure to properly effect service, the court concludes that it may exercise ancillary jurisdiction over this matter.

B.     *Prison Litigation Reform Act*

O'Toole next argues that Disessa has failed to meet the "physical injury" requirement of the Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997e. Specifically, he states that section 1997e(e) of the PLRA "requires the plaintiff to prove that he suffered a physical injury as a prerequisite to recovering compensatory damages based on mental or emotional injuries" and that because Disessa has not shown that he suffered physical injury, his malicious prosecution and conspiracy charges must be dismissed. Def.'s Mem. 6 [#23].

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other *Federal* law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (emphasis added). Where Disessa's claims are brought pursuant to state law, the PLRA is inapplicable.[3]

C.     *Official Capacity Claims*

The <u>Complaint</u> [#1] asserts malicious prosecution and conspiracy claims against O'Toole in both his official and individual capacities. O'Toole argues that these claims cannot be brought

---

[3] Massachusetts has a statute comparable to the PLRA, Mass. Gen. Laws ch. 127, § 38E. However, the statute does not contain any requirement that the plaintiff have sustained physical injury in order to bring a claim.

against him in his official capacity. Def,'s Mem. 8 [#23]. He is correct. See Hafer v. Melo, 502 U.S. 21, 25-28 (1991) (state officials may be held personally liable for damages because of actions taken in their official capacities only if they are sued in their individual capacities). The claims are accordingly dismissed against O'Toole in his official capacity.

### D.   *Individual Capacity Claims*

The court now turns to whether Disessa has stated a claim of malicious prosecution or civil conspiracy against O'Toole in his individual capacity.

#### 1.   Malicious Prosecution

To state a claim of common-law malicious prosecution, a plaintiff must demonstrate "(1) the commencement or continuation of a criminal proceeding against the eventual plaintiff at the behest of the eventual defendants; (2) the termination of the proceeding in favor of the accused; (3) an absence of probable cause for the charges; and (4) actual malice." See Nieves v. McSweeney, 241 F.3d 46, 53 (1st Cir. 2001). Here, Disessa alleges that O'Toole and LaRoche fabricated charges against him; that they provided false statements and encouraged and participated in his prosecution; and that he was ultimately acquitted. Compl. ¶¶ 17, 22-25 [#1]. These facts are sufficient to support a claim of malicious prosecution.

#### 2.   Civil Conspiracy

To state a claim for civil conspiracy claim, "a plaintiff must demonstrate that a combination of persons acted pursuant to an agreement to injure the plaintiff." Gutierrez v. Mass. Bay Transp. Auth., 437 Mass. 396, 415, 772 N.E.2d 552 (2002). "It is not sufficient to prove joint tortious acts of two or more persons"; rather, the plaintiff must demonstrate that the participants acted pursuant to an agreement. Id. Disessa alleges that O'Toole and LaRoche brought false assault and battery charges against him. Compl. ¶¶ 21-23 [#1]. This supports the

inference that the two corrections officers acted in concert to frame him for a crime that he did not commit. Earle v. Benoit, 850 F.2d 836, 843 (1st Cir. 1988) ("the agreement that rests at the heart of a conspiracy is seldom susceptible of direct proof: more often than not such an agreement must be inferred from all the circumstances"). Disessa has therefore stated a claim for civil conspiracy.

### 3.    Qualified Immunity

O'Toole's last argument is that, even if Disessa's rights were violated, he is entitled to qualified immunity. Def.'s Mem. 14-16 [#23]. "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). When a public official asserts a qualified immunity defense, courts engage in a two-part inquiry, asking (1) whether the facts alleged by the plaintiff make out a violation of a protected right, and (2) whether, at the time of the defendant's alleged violation, the right at issue was clearly established such that a reasonable officer would have known that his or her conduct violated that right. See Morelli v. Webster, 552 F.3d 12, 18 (1st Cir. 2009).

Qualified immunity is an "immunity from suit rather than a mere defense to liability." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). The Supreme Court has therefore "repeatedly . . . stressed the importance of resolving immunity questions at the earliest possible stage in litigation." Hunter v. Bryant, 502 U.S. 224, 227 (1991) (per curiam). A "driving force" behind the doctrine is to "ensure that 'insubstantial claims' against government officials be resolved prior to discovery." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Anderson v. Creighton, 483 U.S. 635, 640 n.2 (1987)). A qualified immunity defense may thus be asserted on

a motion to dismiss where the allegations of the complaint fail to state a plausible claim for relief, and if successful, may thereby avoid discovery altogether. See Iqbal, 556 U.S. at 684-85.

However, that is not the case here. The court has concluded that Disessa has stated claims for malicious prosecution and civil conspiracy based on the allegations that O'Toole and LaRoche fabricated assault and battery charges against him, initiated criminal proceedings against him, and assisted in his prosecution on those false charges. If Disessa can produce the evidence to prove such allegations, O'Toole would not have qualified immunity for such conduct.

## V.    Conclusion

For the foregoing reasons, O'Toole's Motion to Dismiss [#22] is GRANTED as to the official capacity claims and DENIED as to the individual capacity claims.

IT IS SO ORDERED.

May 20, 2021                                          /s/ Indira Talwani
                                                     United States District Judge